KRASELNIK & LEE, PLLC
Robert L. Kraselnik (RK 0684)
C.K. Lee (CL 4086)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1189
Fax: 212-465-1181
*Attorneys for Plaintiffs, FLSA Collective Plaintiffs
and the Class members*

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

---

WENYU LU and FLOR DUARTE,
on behalf of themselves and others similarly situated
and the proposed Rule 23 Class,

           Plaintiffs,

              v.

ALEXANDER WANG INCORPORATED,
ALEXANDER WANG GLOBAL RETAIL LLC,
ALEXANDER WANG NEW YORK CITY LLC,
ALEXANDER WANG, DENNIS WANG,
JESSICA DOE (last name unknown),
GINI DOE (last name unknown) and
NATALIE DOE (last name unknown),

           Defendants.

---

Case No.:

CLASS AND COLLECTIVE
ACTION COMPLAINT

Plaintiffs, WENYU LU and FLOR DUARTE, (each, a Plaintiffs and together, "Plaintiffs"), on behalf of themselves and others similarly situated, by and through their undersigned attorneys, hereby files this class and collective action Complaint against Defendants, ALEXANDER WANG INCORPORATED, ALEXANDER WANG GLOBAL RETAIL LLC and ALEXANDER WANG NEW YORK CITY LLC (collectively, the "Corporate Defendants") and Defendants, ALEXANDER WANG,

1

DENNIS WANG, JESSICA DOE (last name unknown), GINI DOE (last name unknown) and NATALIE DOE (last name unknown) (each an "Individual Defendant" and together with the Corporate Defendants, the "Defendants") and state as follows:

## INTRODUCTION

1.   Plaintiffs allege, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§201 *et. seq.* ("FLSA"), that they are entitled to recover from Defendants: (1) unpaid compensation caused by time shaving, (2) unpaid overtime premium, (3) liquidated damages, (4) attorneys' fees and costs (5) unpaid medical leave and (6) lost compensation and other compensatory and punitive damages caused by Defendants' retaliatory measures against Plaintiffs for complaining about workplace abuse.

2.   Plaintiffs further allege that, pursuant to the New York Labor Law ("NYLL"), they are entitled to recover from Defendants: (1) unpaid compensation caused by time shaving, (2) unpaid overtime premium, (3) unpaid spread of hours premium, (4) invalid wage statement, (5) liquidated and statutory damages, (6) attorneys' fees and costs and (7) lost compensation and other compensatory and punitive damages caused by Defendants' retaliatory measures against Plaintiffs for complaining about workplace abuse.

3.   Plaintiffs further allege that Defendants caused intentional infliction of emotional distress upon Plaintiffs, in violation of the prevailing common law in New York State (See *Howell v. New York Post Co.*, 81 N.Y.2d 115, 121, 596 N.Y.S.2d 350, 353, 612 N.E.2d 699, 702 (1993)), and that Plaintiffs are entitled to recover from Defendants compensatory and punitive damages.

4. Plaintiffs further allege that Defendants deprived Plaintiffs of their rights as an employee as a result of Defendants' unlawful discriminatory practices.

### JURISDICTION AND VENUE

5. This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§1331, 1337 and 1343 and has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367.

6. The jurisdiction of this Court is invoked pursuant to 18 U.S.C. § 1965, 28 U.S.C. §§1331, 1343 and 2202 to secure protection of and to redress deprivation of rights secured by the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981, providing for the protection of all persons' right to make and enforce contracts under the color of state law.

7. The jurisdiction of this Court in invoked pursuant to 18 U.S.C. § 1965, 28 U.S.C. §§1331, 1343 and 2202 to secure protection of the Family and Medical Leave Act, as amended, 29 U.S.C. § 2601, et seq. ("FMLA")

8. Venue is proper in the Southern District pursuant to 28 U.S.C. §1391.

### PARTIES

9. Plaintiffs are residents of Queens County, New York.

10. ALEXANDER WANG INCORPORATED is a Delaware company operating as a foreign business corporation in New York. Its address for service of process is ALEXANDER WANG INCORPORATED, 210 FIFTH AVENUE, STE 1002, NEW YORK, NEW YORK, 10010.

11. ALEXANDER WANG GLOBAL RETAIL LLC is a New York domestic limited liability company, with an address for service of process at THE LAW OFFICES

OF DAVID C. BERG, 425 MADISON AVENUE, 11TH FLOOR, NEW YORK, NEW

YORK, 10017-1110.

12.   ALEXANDER WANG NEW YORK CITY LLC is a is a New York

domestic limited liability company, with an address for service of process at THE LAW

OFFICES OF DAVID C. BERG, 425 MADISON AVENUE, 11TH FLOOR, NEW

YORK, NEW YORK, 10017-1110.

13.   ALEXANDER WANG is a world famous fashion designer.

ALEXANDER WANG, along with his brother, DENNIS WANG, jointly operate the

Corporate Defendants as a common unified enterprise.

14.   Defendants own and operate a garment factory at 386 Broadway, 5th floor,

New York NY 10013 (the "Factory"). Plaintiffs were employed by Defendants at the

Factory.

15.   JESSICA DOE (last name unknown), GINI DOE (last name unknown)

and NATALIE DOE (last name unknown) are managers of the Factory (together, the

"Managers"). The Managers are controlled directly by ALEXANDER WANG and

DENNIS WANG.

16.   Upon information and belief, each of the Individual Defendants is an

owner, senior executive officer and/or principal of the Corporate Defendants.

17.   Upon information and belief, each of the Individual Defendants is an

"employer" of Plaintiffs and others similarly situated and who exercised control over the

terms and conditions of employment of Plaintiffs, the FLSA Collective Plaintiffs and

Class members and similarly situated employees. Each of the Individual Defendants also

had the power to (i) fire and hire Plaintiffs, the FLSA Collective Plaintiffs and Class

members, (ii) determine rate and method of pay, (iii) determine employee schedules, and (iv) otherwise affect the quality of employment of Plaintiffs, the FLSA Collective Plaintiffs and Class members. The Defendants are employers within the meaning of the New York State Executive Law § 296, New York City Administrative Code § 8-502, pursuant to 28 U.S.C. 1367, and the FMLA.

18. At all relevant times, each of the Corporate Defendants was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA.

19. At all relevant times, the work performed by Plaintiffs, the FLSA Collective Plaintiffs and the Class Members was directly essential to the enterprise operated by Defendants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

20. Plaintiffs bring claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all garment workers (including sample makers, cutters and pattern makers) employed by Defendants on or after the date that is three years before the filing of the Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

21. At all relevant times, Plaintiffs and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them for all of their hours worked due to Defendants' policy of time shaving (i.e. having Plaintiffs and other FLSA Collective Plaintiffs work off the clock) and failing to pay the proper overtime premium at the rate of one and one half

times the regular rate for work in excess of forty (40) hours per workweek. The claims of Plaintiffs stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

22.   The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to §16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available form the Defendants. Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS -- NEW YORK

23.   Plaintiffs bring claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all garment workers (including sample makers, cutters and pattern makers) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class Period").

24.   All said persons, including Plaintiffs, are referred to herein as the "Class." The class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

25.     The proposed Class is numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts on which the calculation of that number are presently within the sole control of Defendants, upon information and belief, there are more than forty (40) members of the Class.

26.     Plaintiffs' claims are typical of those claims, which could be alleged by any member of the Class, and the relief sought is typical of the relief, which would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay for all hours worked due to Defendants' policy of time shaving and failing to properly pay overtime compensation and "spread of hours" premium.   Defendants also failed to properly provide wage statements containing requisite information required under the New York Labor Law and other wage and hour notices to Plaintiffs and Class members in violation of the New York Labor Law.

27.     Defendants also implemented a systematic policy of abuse towards their Factory employees.   Defendants refused to allow for proper break times and would force Plaintiffs and Class members to work 15 hour days or even overnight without breaks.

28.     Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiffs and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

7

29.     Plaintiffs are able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

30.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy -- particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because of losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of

common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

31.     Upon information and belief, Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

32.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

> a) Whether Defendants employed Plaintiffs and the Class within the meaning of the New York law;
>
> b) What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay the Class members properly;
>
> c) At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay the Class members for their work;
>
> d) Whether Defendants implemented a policy of time shaving and illegally caused Plaintiffs and Class members to work off the clock;
>
> e) Whether Defendants properly gave Plaintiffs and Class members wage statements containing requisite information required under the New

York Labor Law and other wage and hour notices to Plaintiffs and
Class members as required under the New York Labor Law;

f)   Whether Defendants failed to properly provide break times to
Plaintiffs and Class members as required under the New York Labor
Law;

g)   Whether Defendants properly compensated Plaintiffs and Class
members for overtime under state and federal law;

h)   Whether Defendants paid Plaintiffs and the Class members the New
York State "spread of hours" premium when their workdays exceeded
ten hours;

i)   Whether Defendants systematically caused intentional infliction of
emotional distress upon Plaintiffs and Class members when, under
threat of termination, they forced Plaintiffs and Class members to
work 15 hour days or longer.


## STATEMENT OF FACTS REGARDING WENYU LU


33.   On or about August 2008, Plaintiff LU was hired by Defendants to work as a
sample maker for Defendants at the Factory located at 386 Broadway, 5th Floor, New
York NY 10013.  For at least 24 weeks out of the year, during the four seasonal Fashion
Weeks which take place in New York City annually, Plaintiff LU and all other garment
workers employed by Defendants were required to work a regular schedule from 9:00am
to midnight, six days per week.  During the six week period leading up to and including

each of the four Fashion Weeks that take place annually in New York City in February, May, September and November, Plaintiff LU and all other garment workers had to be available around the clock, and frequently their working hours exceeded 15 hours per day or even overnight, and if necessary, they worked seven days per week. Plaintiff LU was paid at an hourly rate of $25. Not all of the hours worked during the periods leading up to and including Fashion Week were included in the paychecks of Plaintiff LU and other garment workers employed by Defendants.

34.   Plaintiff LU worked for Defendants until on or about February 16th, 2012, when Plaintiff LU was fired. Plaintiff was unable to work due to illnesses caused by Defendants' inhumane working conditions.

35.   On or about Feb. 12th, 2010, Plaintiff LU was forced to work from 9:00am in the morning until 10:00am the next morning for total of 25 hours with no break. As a result of the inhumane working hours, Plaintiff LU suffered an acute pain in the stomach area. Defendants refused to give Plaintiff LU time to rest and pressured Plaintiff LU to continue to work or be fired. Plaintiff LU passed out at the work station and was later taken home by taxi.

36.   Following the collapse, Plaintiff LU was still forced to work long hours again, with constant pain. After about seven more days, Plaintiff LU's pain became unbearable and he was rushed to the Emergency Room at Elmhurst Hospital, where he was admitted as an emergency patient. Plaintiff LU was hospitalized for twelve days. Defendants were enraged and upset that Plaintiff LU was admitted into the hospital and unable to work. Defendants failed to provide Plaintiff LU's pay during his hospitalization.

37. On or about January 24th, 2012, Defendants ordered Plaintiff LU to a professional grade leather trouser, from cut to finish in four hours. Regularly, this requires 12 hours of work. Plaintiff LU could not finish it in four hours. By the time when the four hours just passed, Defendants showed up at Plaintiff LU's work station, and derided him for being "slow", "unskillful, "lazy," "stupid ", "want to have a strike", etc., and ordered that Plaintiff LU must finish before taking any break or go home. This is the general practice of the Managers who would set impossible deadlines to Plaintiff and Class members and then deride them and force them to work late into the night. It took Plaintiff LU twelve hours to finish this task to the satisfactory of the Defendants. As a result of the long hours hard labor and lack of rest, Plaintiff LU suffered an eye injury as well, which requires medical treatment, among other physical and physiological illness and depression.

38. On or about February 2012, Plaintiff LU asked for leave because Plaintiff LU was physically debilitated and unable to work. Plaintiff LU also complained about the inhumane working conditions. As their response, Defendants fired Plaintiff LU immediately.

## STATEMENT OF FACTS REGARDING FLOR DURANTE

39. On or about November 2010, Plaintiff DURANTE was hired by Defendants to work as a sample maker for Defendants at the Factory located at 386 Broadway, 5th Floor, New York NY 10013. For at least 24 weeks out of the year, during the four seasonal Fashion Weeks which take place in New York City annually, Plaintiff LU and all other garment workers employed by Defendants were required to work a regular schedule from 9:00am to midnight, six days per week. During the six week

period leading up to and including each of the four Fashion Weeks that take place annually in New York City in February, May, September and November, Plaintiff DURANTE and all other garment workers had to be available around the clock, and frequently their working hours exceeded 15 hours per day or even overnight, and if necessary, they worked seven days per week. Plaintiff DURANTE was paid at an hourly rate of $22. Not all of the hours worked during the periods leading up to and including Fashion Week were included in the paychecks of Plaintiff DURANTE and other garment workers employed by Defendants.

40.     Plaintiff DURANTE was hospitalized on January 3rd, 2012.  Plaintiff DURANTE suffered from acute injury and inflammation to her breast, which required surgery.  Her physical decline was caused by the stress of long hours of work required by Defendants in order to stay employed.   If employees complained, they would be immediately fired.

41.     Defendants have refused to pay for Plaintiff DURANTE's sick leave, even though the sick leave was limited to two day after the surgery. Defendants have failed to comply with the worker's compensation law and have refused to provide necessary information to Plaintiff DURANTE to file for her worker's compensation claims.

42.     After her surgery, Plaintiff DURANTEcontinued to work long hours of hard labor, often exceeding 90 hours per week. Defendants ordered her to finish a high grade leather jacket in one hour, while work of this type would normally take a skilled tailor 8 to 10 hours to complete.

43.     When Plaintiff DURANTE complained, she was fired.  Her last day of employment was February 21, 2012.

## STATEMENT OF ADDITIONAL FACTS

44.    Although Plaintiffs, FLSA Collective Plaintiffs and Class members are working in the United States, working conditions provided by Defendants are comparable to those of third world countries.   The factory room where Plaintiffs and class representatives were forced to labor is about 200 square foot in size, with more than twenty garment workers working inside at any given time.   Commercial machinery located within the factory premises constantly make loud noises, and there are no windows or any ventilation facility.

45.   The Individual Defendants' conduct is particularly outrageous and offensive. While ALEXANDER WANG and DENNIS WANG are living the lifestyle of international jet-setting fashion moguls, their profits are squeezed from the sweat and labor of poor immigrant workers such as Plaintiffs, FLSA Collective Plaintiffs and Class Members.  What is particularly outrageous is that ALEXANDER WANG and DENNIS WANG knowingly allow discriminatory practices against garment workers, many of whom share a common ethnic background as ALEXANDER WANG and DENNIS WANG.

46.    Although all the Managers are white, all garment workers are exclusively Asian or Latino immigrants.  Defendants hire exclusively minorities for the garment worker positions.   With direct knowledge of ALEXANDER WANG and DENNIS WANG, Plaintiffs, FLSA Collective Plaintiffs and Class Members were regularly called "lazy," "stupid," "making trouble," "trouble maker," disparaging references to garment workers' national origins (i.e. calling garment workers from Asia "China"), and other derogatory names. No Manager is a minority, nor has any garment worker been promoted

14

to a Manager-level position, ever.    Neither Plaintiff has ever been considered for a promotion because of their ethnic background.

47.    Defendants hire minorities, not because of any policy or concern to further success for minorities in the community, but because such minorities are easily controlled and fearful of losing their jobs if they complain of the outrageous employment conditions and working hours. All garment workers hired by Defendants suffer similar working hour abuse, poor working conditions and physical and emotional abuse caused by Defendants berating them if they are unable to make samples within impossible deadlines. No other employees hired by Defendants, outside of the Factory, are required to work the inhumane hours required by garment workers employed at the Factory.

48.    Plaintiffs, FLSA Collective Plaintiffs and Class Members, with minor variations, worked similar hours. They were all compensated on an hourly basis. Their collective responsibilities were to manufacture samples of clothing designed by ALEXANDER WANG or designers supervised by him.

49.    Plaintiffs, FLSA Collective Plaintiffs and Class Members were required to work off the clock. They would be required to work before the clocked in or work after they clocked out.

50.    Plaintiffs, FLSA Collective Plaintiffs and Class Members were also required to work around the clock, if necessary when the season was busy, especially during the weeks leading up to Fashion Week in New York City. Because there are four Fashion Weeks in New York City annually, Plaintiffs, FLSA Collective Plaintiffs and Class Members were required to work inhumane hours. If anyone complained, they would be summarily terminated. No excuses (including illness or exhaustion) was tolerated, even

though Plaintiffs, FLSA Collective Plaintiffs and Class Members were required to work in excess of 100 hour weeks at times (15 hours per day for 7 days per week) during the six week period leading up to and including each of the four seasonal Fashion Weeks in New York City. Such abuse was extreme and outrageous conduct and caused severe emotional distress. If Plaintiffs, FLSA Collective Plaintiffs and Class Members were unable or unwilling to work such hours, they would be fired. Thus they worked daily in fear of retribution and retaliation, yet their bodies would be literally breaking down from the constant pressure of additional samples that had to be completed. Such emotional distress was a direct cause of illnesses suffered by Plaintiffs. Although not all garment workers were hospitalized, all suffered from fatigue, stress and severe motional distress.

51. With direct knowledge of ALEXANDER WANG and DENNIS WANG, the Managers would abuse and berate Plaintiffs, FLSA Collective Plaintiffs and Class Members to produce outstanding orders, without regard to how long it took to complete the orders or whether employees had breaks or rest time. Although sometimes Plaintiffs, FLSA Collective Plaintiffs and Class Members took a 30 minute lunch and dinner break, they were essentially on call and had to eat and work simultaneously if it was busy.

52. During the relevant period of employment, Plaintiffs, FLSA Collective Plaintiffs and Class members were not properly notified by Defendants of wage statements containing requisite information required under the New York Labor Law and other wage and hour notices to Plaintiffs and Class members as required under the New York Labor Law.

53. The workdays of Plaintiffs, the FLSA Collective Plaintiffs, and

members of the Class regularly exceeded ten hours yet they did not receive any spread of hour pay as required under New York State law.

54.    Defendants unlawfully failed to pay the Plaintiffs, the FLSA Collective Plaintiffs, and members of the Class one-and-one-half times their regular rate for hours they worked over 40 in a workweek.

55.    Neither Plaintiff was compensated for their time off caused by their illnesses suffered from the long hours of work, in violation of the FMLA.

56.    Defendants retaliated against Plaintiffs for complaining about the inhuman working conditions, in violation of the FLSA and NYLL.

57.    Defendants violated the FMLA because they failed to pay Plaintiffs for the sick leave.  Plaintiffs had worked at least 1,250 hours over the last 12 months prior to their illness and Defendants employ more than 50 employees.

58.    Plaintiffs retained Kraselnik & Lee, PLLC to represent Plaintiffs, the FLSA Collective Plaintiffs, and Class members in this litigation and have agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

### COUNT I

### VIOLATION OF THE FAIR LABOR STANDARDS ACT

59.    Plaintiffs reallege and reaver Paragraphs 1 through 58 of this class and collective action Complaint as if fully set forth herein.

60.    At all relevant times, upon information and belief, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a).

Further, Plaintiffs and the FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a).

61.   At all relevant times, Defendants employed Plaintiffs and the FLSA Collective Plaintiffs within the meaning of the FLSA.

62.   At all relevant times, each Corporate Defendant had gross annual revenues in excess of $500,000.

63.   At all relevant times, Defendants caused Plaintiffs and the FLSA Collective Plaintiffs to work off the clock.

64.   Records, if any, concerning the number of hours worked by Plaintiffs and the FLSA Collective Plaintiffs and the actual compensation paid to Plaintiffs and the FLSA Collective Plaintiffs should be in the possession and custody of the Defendants. Plaintiffs intend to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

65.   Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiffs and the FLSA Collective Plaintiffs at the statutory rate of time and one-half for their hours worked in excess of forty (40) hours per week when Defendants knew or should have known such was due.

66.   Defendants failed to properly disclose or apprise Plaintiffs and the FLSA Collective Plaintiffs of their rights under the FLSA.

67.   As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiffs and the FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

68.  Due to the intentional, willful and unlawful acts of Defendants, Plaintiffs and the FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of improperly retained tips, unpaid overtime wages, plus an equal amount as liquidated damages.

69.  Plaintiffs and the FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. §216(b).

COUNT II

VIOLATION OF THE NEW YORK LABOR LAW

70.   Plaintiffs reallege and reaver Paragraphs 1 through 69 of this class and collective action Complaint as if fully set forth herein.

71.  At all relevant times, Plaintiffs and Class members were employed by the Defendants within the meaning of the New York Labor Law, §§2 and 651.

72.  Defendants caused Plaintiffs and Class members to work off the clock.

73.  At all relevant times, Defendants failed to properly give Plaintiffs and Class members wage statements containing requisite information required under the New York Labor Law and other wage and hour notices to Plaintiffs and Class members as required under the New York Labor Law.

74.  At all relevant times, Defendants failed to properly give Plaintiffs and Class members break times to Plaintiffs and Class members as required under the New York Labor Law.  As such, because Plaintiffs and Class members worked during break times that were statutorily required, Plaintiffs and Class members are owed additional overtime compensation.

75.  Plaintiffs and the Class members regularly worked more than ten (10) hours in

a workday. Defendants willfully violated Plaintiffs' and Class members' rights by failing to pay "spread of hours" premium to Plaintiffs and Class members for each day they worked ten (10) or more hours.

76. Due to the Defendants' New York Labor Law violations, Plaintiffs and Class members' are entitled to recover from Defendants their unpaid compensation caused by time shaving and break time violations, unpaid spread of hours premium, statutory damages, interest, unreasonably delayed payments, reasonable attorneys' fees, and costs and disbursements of the action, pursuant to New York Labor Law §663(1).

**COUNT III**
**RACE DISCRIMINATION**
**IN VIOLATION OF**
**THE CIVIL RIGHTS ACT OF 1866, 42 U.S.C. § 1981**

77.     Plaintiff re-alleges Paragraphs 1 through 76 of this class and collective action Complaint as if fully set forth herein.

78.     The aforesaid discriminatory acts and omissions of Defendants and their agents interfered with Plaintiffs and their right to enforce contracts.

79.     That the purpose of Defendants and their agents in so acting was to prevent Plaintiffs through economic and psychological intimidation, from seeking the equal protection of the laws, and from enjoying the equal privileges and immunities of citizens under the Constitution and laws of the United States and the State of New York.

80.     Pursuant to their conduct, Defendants and their agents acted to deprive the Plaintiffs of their civil rights, by repeated and insidious acts of bad faith in violation of 42 U.S.C. § 1981.

81.     As a result of the aforesaid acts, depriving Plaintiffs of their civil rights, Plaintiff suffered mental anguish, emotional distress, loss of employment opportunities,

and other monetary damages.

## COUNT IV
### HOSTILE WORK ENVIRONMENT
### IN VIOLATION OF
### THE CIVIL RIGHTS ACT OF 1866, 42 U.S.C. § 1981

82.     Plaintiffs re-allege Paragraphs 1 through 81 of this class and collective action Complaint as if fully set forth herein.

83.     Plaintiffs allege that Defendants and their agents engaged in various severe and hostile actions against them acting individually as a result of their opposition to race discrimination.

84.     That the purpose of Defendants and their agents in so acting was to prevent Plaintiffs through economic and psychological intimidation, from seeking the equal protection of the laws, and from enjoying the equal privileges and immunities of citizens under the Constitution and laws of the United States and the State of New York.

85.     Pursuant to their conduct, Defendants and their agents acted to deprive the Plaintiffs of their civil rights, by repeated and insidious acts of harassment, intimidation, bad faith and threat, all in violation of 42 U.S.C. § 1981.

86.     As a result of the aforesaid acts, depriving Plaintiffs of their civil rights, they suffered mental anguish, emotional distress, loss of employment opportunities, and other monetary damages.

## COUNT V
### RACE DISCRIMINATION
### IN VIOLATION OF
### NEW YORK STATE EXECUTIVE LAW § 296

87.     Plaintiffs re-allege Paragraphs 1 through 86 of this class and collective action Complaint as if fully set forth herein.

88.    New York State Executive Law § 296 et seq., makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment on the basis of race.

## COUNT VI
### HOSTILE WORK ENVIRONMENT
### IN VIOLATION OF
### NEW YORK STATE EXECUTIVE LAW § 296

89.    Plaintiffs re-allege Paragraphs 1 through 88 of this class and collective action Complaint as if fully set forth herein.

90.    New York State Executive Law § 296 et seq., makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment on the basis of race. The law also makes it unlawful to create a severe and hostile environment where retaliation and race discrimination are encouraged and/or tolerated.

## COUNT VII
### RACE DISCRIMINATION
### IN VIOLATION OF
### NEW YORK CITY ADMINISTRATIVE CODE § 8-502

91.    Plaintiffs re-allege Paragraphs 1 through 90 of this class and collective action Complaint as if fully set forth herein.

92.    New York City Administrative Code § 8-502 makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment on the basis of race.

## COUNT VIII
### HOSTILE WORK ENVIRONMENT
### IN VIOLATION OF
### NEW YORK CITY ADMINISTRATIVE CODE § 8-502

93.    Plaintiffs re-allege Paragraphs 1 through 93 of this class and collective action Complaint as if fully set forth herein.

94.     New York City Administrative Code § 8-502, makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment on the basis of race. The law also makes it unlawful to create a severe and hostile environment where retaliation, race discrimination are encouraged and/or tolerated.

## COUNT IX

## INTERFERENCE/VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT

95.     Plaintiff re-alleges Paragraphs 1 through 94 of this class and collective action Complaint as if fully set forth herein.

96.     Defendants have interfered with Plaintiffs' right to take protected FMLA leave and their entitlement to be restored to the same or an equivalent position as the position they had held prior to their leave, upon their return to work following his absence.  When Plaintiffs asked for medical leave, they were summarily dismissed.

97.     Defendants' conduct violates the prohibition against interference with, restraint, or denial of the exercise of or the attempt to exercise Plaintiffs' rights contained in the FMLA as set forth in 29 U.S.C. §2615(a)(1).

98.     Upon information and belief, the violations by Defendants were willful and not in good faith, and Plaintiffs are therefore entitled to liquidated damages.

100.    As a direct and proximate result of said acts, Plaintiff has suffered and continues to suffer damages, including but not limited to lost wages and benefits, interest, and reasonable attorney's fees and costs.

## COUNT X

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

101.    The New York state law tort of intentional infliction of emotional distress

has four elements: (1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress. See *Howell v. New York Post Co.*, 81 N.Y.2d 115, 121, 596 N.Y.S.2d 350, 353, 612 N.E.2d 699, 702 (1993); *Bender v. City of New York*, 78 F.3d 787 (2d Cir. 1996).

102.    Defendants' inhumane work environment, where Plaintiffs and Class members are berated when unable to complete samples within impossible time limitations and forced to work around the clock, in fear of retaliation or reprisal by Defendants, is extreme and outrageous conduct.

103.    Defendants conduct was intentional, and they had full knowledge of the physical and emotional effects of their inhumane working hours on Plaintiffs and other garment workers. If anyone complained, they were fired.

104.    Plaintiffs suffered directly from Defendants' outrageous conduct. The long working hours, stress and fear wreaked havoc on the health of Plaintiffs and their physical injury and emotional distress. Other Class members also suffered directly, although not all Class members were hospitalized as Plaintiffs were. The emotional distress is evident and displayed by the physical manifestations of Plaintiffs' hospitalizations from overwork and exhaustion.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs on behalf of the FLSA Collective Plaintiffs and the Class members, respectfully request that this Court grant the relief described above and as follows:

a.     A declaratory judgment that the practices complained of herein are
       unlawful under the FLSA and the New York Labor Law;

b.  An injunction against Defendants and their officers, agents, successors,
    employees, representatives and any and all persons acting in concert with
    them as provided by law, from engaging in each of the unlawful practices,
    policies and patterns set forth herein;

c.  An award of compensatory damages to compensate Plaintiffs for
    discrimination and emotional distress suffered;

d.     An award of unpaid "spread of hours" premium due under the New York
       Labor Law;

e.     An award for punitive damages;

f.     An award of liquidated and/or punitive damages as a result of Defendants'
       willful failure to pay "spread of hours" premium pursuant to the New
       York Labor Law;

g.     An award of prejudgment and postjudgment interest;

h.     An award of costs and expenses of this action together with reasonable
       attorneys' and expert fees;

i.   Designation of Plaintiffs as the Representatives of the FLSA Collective
     Plaintiffs;

j.   Designation of this action as a class action pursuant to F.R.C.P. 23;

k.   Designation of Plaintiffs as the Representatives of Class; and

l.   Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demands trial by jury on all issues so triable as of right by jury.


Dated: March 23, 2012


Respectfully submitted,

KRASELNIK & LEE, PLLC
Robert L Kraselnik (RK 0684)
C.K. Lee (CL 4086)
30 East 39th Street
Second Floor
New York, NY 10016
Tel.: 212-465-1189
Fax: 212-465-1181
*Attorneys for Plaintiffs, FLSA Collective
Plaintiffs and the Class members*

By: _____
C.K. LEE (CL 4086)