UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x

WENYU LU and FLOR DUARTE, on behalf of
themselves and others similarly situated and the
proposed Rule 23 Class,

                               Plaintiffs,

   -against-

ALEXANDER WANG INCORPORATED,
ALEXANDER WANG GLOBAL RETAIL
LLC, ALEXANDER WANG NEW YORK
CITY LLC, ALEXANDER WANG, DENNIS
WANG, JESSICA DOE (last name unknown),
GINI DOE (last name unknown), NATALIE
DOE (last name unknown),

                            Defendants.

------------------------------------------------------------ x

         12-cv-02187 (HB) (RLE)

         ECF Case

## DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

WINSTON & STRAWN LLP
200 Park Avenue
New York, New York 10166
(212) 294-6700

Attorneys for Defendants
Alexander Wang Incorporated
Alexander Wang Global Retail LLC
Alexander Wang New York City LLC
Alexander Wang and Dennis Wang

Table of Contents

Page

Table of Authorities ......................................................................................................... ii

Preliminary Statement ......................................................................................................1

Statement of Facts ............................................................................................................4

      A.     The Parties ..........................................................................................4

      B.     The Alleged Claims ............................................................................5

      C.     Procedural Posture .............................................................................7

Argument ..........................................................................................................................8

I.      THE STANDARD FOR DISMISSAL UNDER FED. R. CIV. P. 12(c)............................8

II.     THE AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR
      RACE DISCRIMINATION UNDER SECTION 1981, THE NYSHRL
      OR THE NYCHRL.........................................................................................9

      A.     Plaintiffs Fail To Allege that They Are Members of a Protected Class ...............10

      B.     Plaintiffs Fail to Allege that They Suffered an Adverse Employment
            Action under Circumstances Giving Rise to a Reasonable Inference of
            Race Discrimination...................................................................................11

III.    THE AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR HOSTILE
      WORK ENVIRONMENT UNDER SECTION 1981, THE NYSHRL OR THE
      NYCHRL ...................................................................................................14

IV.    THE AMENDED COMPLAINT FAILS TO STATE A
      CLAIM FOR UNPAID OVERTIME WAGES UNDER THE FLSA..............................16

V.     THE AMENDED COMPLAINT FAILS TO STATE A CLAIM UNDER
      THE NEW YORK LABOR LAW.......................................................................18

VI.    THE AMENDED COMPLAINT FAILS  TO STATE A CLAIM UNDER
      THE FMLA..................................................................................................19

VII.   THE AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR
      INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.....................................22

Conclusion ......................................................................................................................24

<u>Table of Authorities</u>

CASES

*Acosta v. City of New York,*
    No. 11 Civ. 856 (KBF), 2012 WL 1506954 (S.D.N.Y. Apr. 26, 2012) ....... 8, 9, 14, 15n. & 16

*Ahmed v. Compass Group,*
    No. 99 Civ. 10032 (JSM), 2000 WL 1072299 (S.D.N.Y. Aug. 3, 2000) ..............................23

*Anderson v. Conboy,*
    156 F.3d 167 (2d Cir. 1998)...................................................................................13n.

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009).............................................................................. 2, 10 & 16

*Bank of New York v. First Millennium, Inc.,*
    607 F.3d 905 (2d Cir. 2010)..........................................................................................8

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007).................................................................................................2, 16

*Brown v. Henderson,*
    257 F.3d 246 (2d Cir. 2001)........................................................................ 12, 14 & 15

*Chang v. City of New York Dep't for the Aging,*
    No. 11 Civ. 7062 (PAC) (JLC), 2012 WL 1188427 (S.D.N.Y. Apr. 10, 2012) .....................11

*DeSilva v. North Shore-Long Island Jewish Health System, Inc.,*
    770 F. Supp. 2d 497 (E.D.N.Y. 2011) ........................................................................16, 18

*DiStefano v. Communication Workers of America,*
    No. 10 Civ. 1166 (LTS) (FM), 2012 WL 1080249 (S.D.N.Y. Mar. 30, 2012) ...................13n.

*Ennis v. Sonitrol Management Corp.,*
    No. 02 Civ. 9070, 2006 WL 177173 (S.D.N.Y. Jan. 25, 2006)..............................................14

*Fleming v. MaxMara,*
    644 F. Supp. 2d 247 (S.D.N.Y. 2009).......................................................................................16

*Flowers v. Construction & General Building Laborers Local 79,*
    No. 11 Civ. 6891 (HB), 2012 WL 1514816 (S.D.N.Y. Apr. 30, 2012)...................................11

*Fulham v. HSBC Bank USA,*
    No. 99 Civ. 11054 (JGK), 2001 WL 1029051 (S.D.N.Y. Sept. 6, 2001) ..........................20, 21

*Fullwood v. Association for the Help of Retarded Children, Inc.,*
    No. 08 Civ. 6739 (SAS), 2010 WL 3910429 (S.D.N.Y. Sept. 28, 2010)................................15

*Gerzog v. London Fog Corp.*,
    907 F. Supp. 590 (E.D.N.Y. 1995) ......................................................................24

*Gilani v. National Association of Securities Dealers, Inc.*,
    No. 96 Civ. 8070 (SS), 1997 WL 473383 (S.D.N.Y. Aug. 19, 1997) .....................23

*Glaves-Morgan v. City of New York*,
    No. 11 CV 1248 (HB), 2012 WL 951859 (S.D.N.Y. Mar. 21, 2012) ................22n.

*Hadman v. Sebelius*,
    No. 09 Civ. 4414 (ARR), 2011 WL 4736972 (E.D.N.Y. Oct. 6, 2011) ............12, 14

*Johnston v. Carnegie Corp. of New York*,
    No. 10 Civ. 1681 (PAC) (DF), 2011 WL 1085033 (S.D.N.Y. Feb. 24, 2011)....................12n.

*Lee v. Sony BMG Music Entertainment*,
    557 F. Supp. 2d 418 (S.D.N.Y. 2008)..................................................................22

*Lewis v. Alert Ambulette Service Corp.*,
    No. 11 Civ. 442 (JBW), 2012 WL 170049 (E.D.N.Y. Jan. 19, 2012).......................18

*Li Ping Fu v. Pop Art International, Inc.*,
    No. 10 Civ. 8562 (DLC), 2011 WL 6092309 (S.D.N.Y. Dec. 7, 2011) ...................18

*Lydeatte v. Bronx Overall Economic Development Corp.*,
    No. 00 Civ. 5433 (GBD), 2001 WL 180055 (S.D.N.Y. Feb. 22, 2001) ...................22

*McDonnell Douglas Corp. v. Green*,
    411 U.S. 792 (1972).........................................................................................9

*Miller v. Venator Group, Inc.*,
    No. 00 Civ. 0454 (HB), 2000 WL 648186 (S.D.N.Y. May 18, 2000)................... 19, 20 & 21

*Pallonetti v. Liberty Mutual*,
    No. 10 Civ. 4487 (RWS), 2011 WL 519407 (S.D.N.Y. Feb. 11, 2011) .................23

*Perry v. NYSARC, Inc.*,
    424 Fed. App'x 23 (2d Cir. 2011).................................................................20, 22n.

*Ragin v. East Ramapo Central School District*,
    No. 05 Civ. 6496 (PGG), 2010 WL 1326779 (S.D.N.Y. Mar. 31, 2010)................13

*Robinson v. New York Police Dep't Personnel Employment Division*,
    No. 99 Civ. 1654 (DLC), 1999 WL 1044361 (S.D.N.Y. Nov. 18, 1999)................10

*Roff v. Low Surgical & Medical Supply, Inc.*,
    No. CV-03-3655 (SJF) (JMA), 2004 WL 5544995 (E.D.N.Y. May 11, 2004)....... 20, 21 & 22

*Sazon Inc. v. State of New York*,
   No. 11 Civ 3666 (HB), 2011 WL 5910171 (S.D.N.Y. Nov. 28, 2011) ..............................8, 9

*Semper v. New York Methodist Hospital*,
   786 F. Supp. 2d 566 (E.D.N.Y. 2011) ..............................................................................23

*Smith v. Westchester County*,
   769 F. Supp. 2d 448 (S.D.N.Y. 2011)...............................................................................20

*Son v. Reina Bijoux, Inc.*,
   823 F. Supp. 2d 238 (S.D.N.Y. 2011)...............................................................................12

*Sosnowy v. A. Perri Farms, Inc.*,
   764 F. Supp. 2d 457 (E.D.N.Y. 2011) ..............................................................................19

*Sullivan v. Newburgh Enlarged School District Clarence Cooper*,
   281 F. Supp. 2d 689 (S.D.N.Y. 2003)...............................................................................15

*Swierkiewicz v. Sorema N.A.*,
   534 U.S. 506 (2002)............................................................................................................9

*Villegas v. J. P. Morgan Chase & Co.*,
   No. C 09-00261, 2009 WL 605833 (N.D. Cal. Mar. 9, 2009)...................................17

*Williams v. New York City Housing Authority*,
   61 A.D.3d 62, 872 N.Y.S.2d 27 (N.Y. App. Div. 1st Dep't 2009).....................................15n.

*Wilson v. Pioneer Concepts, Inc.*,
   No. 11 Civ. 2353, 2011 WL 3950892 (N.D. Ill. Sept. 1, 2011) ..............................16

*Zubair v. EnTech Engineering P.C.*,
   808 F. Supp. 2d 592 (S.D.N.Y. 2011)...............................................................................18

*Zustovich v. Harvard Maintenance, Inc.*,
   No. 08 Civ. 6856 (HB), 2009 WL 735062 (S.D.N.Y. Mar. 20, 2009) ............................4n., 10

STATUTES

29 U.S.C. § 2611(11)........................................................................................................19

29 U.S.C. § 2612(a)(1)(D)................................................................................................19

29 U.S.C. § 2612(e)(1)......................................................................................................19

Preliminary Statement

Plaintiffs Wenyu Lu ("Lu") and Flor Duarte ("Duarte") (collectively, "plaintiffs") are terminated employees of defendant Alexander Wang Incorporated ("AWI"). In a 103-paragraph, 26-page First Amended Class and Collective Action Complaint (the "Amended Complaint" or "Am. Cmplt."), plaintiffs purport to assert claims on behalf of themselves and others against AWI, Alexander Wang Global Retail LLC and Alexander Wang New York City LLC, as well as against individual defendants Alexander Wang and Dennis Wang (collectively, "defendants"), each arising out of plaintiffs' former employment with AWI. Despite the fact that, as explained below, the Amended Complaint is nothing less than plaintiffs' fourth bite at the apple with respect to pleading these claims, and notwithstanding the prolixity of that pleading, plaintiffs remain unable to frame a legally cognizable claim against defendants. Accordingly, defendants now move, pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P." or "Rule") 12(c), for judgment on the pleadings dismissing each of the claims in the Amended Complaint.

Although the lion's share of the Amended Complaint (six of ten counts) is devoted to plaintiffs' claims of disparate treatment and hostile work environment race discrimination under 42 U.S.C. § 1981 ("Section 1981"), the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL"), plaintiffs fail to make out a plausible claim for race discrimination under any of those statutes. First, with respect to disparate treatment discrimination, plaintiffs fail to plead that they are members of a protected class, or even to identify their respective race(s). Nor do plaintiffs allege facts sufficient to make out a plausible claim that they suffered any adverse employment action because of race. To the contrary, the only action alleged in the Amended Complaint that is even arguably tied to race is that defendants *hired* minorities (plainly not an adverse employment action), and the Amended

Complaint's further allegations – *i.e.*, that all workers at the New York City sample studio at which plaintiffs were employed were treated similarly, and that AWI principals Alexander and Dennis Wang are of the same ethnic background as many of the individuals employed at that facility – weigh against any inference of discrimination. Accordingly, plaintiffs' disparate treatment discrimination claims should be dismissed. (*See* Point II, *infra.*)

Plaintiffs' hostile work environment claims fare no better. Most importantly, the Amended Complaint may be searched in vain for any allegation indicating that the "hostility" plaintiffs claim they suffered during their employment by AWI (in essence, long working hours and demanding supervisors) was "because of" their race(s), an essential element of a hostile work environment claim. Nor can the single non-racially-neutral remark alleged in the Amended Complaint (*i.e.*, that Asian workers were sometimes referred to as "China") suffice to satisfy the "severe or pervasive" standard necessary to state a hostile work environment claim under federal or State law, or even under the more liberal standard embraced by the NYCHRL, and thus plaintiffs' hostile work environment claims must fall as well. (*See* Point III, *infra.*)

Similarly unavailing are plaintiffs' efforts to state a claim for unpaid overtime under the Fair Labor Standards Act ("FLSA"). As courts in this Circuit have consistently instructed, a complaint's mere recitation of the elements of a claim under the FLSA, coupled with vague and conclusory allegations that defendants failed to pay plaintiffs "for all of their hours worked," devoid of any specifics, is insufficient to state a claim under the federal pleading standards articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). (*See* Point IV, *infra.*)

Plaintiffs' wage and hour claims under the New York Labor Law ("NYLL") suffer from the same pleading infirmity as their FLSA claims, *i.e.*, failure to allege facts sufficient to state a

plausible claim under that statute.  Again, merely parroting the language of the statute and asserting that defendants failed to comply with it is legally insufficient.  Moreover, plaintiffs' reliance on the allegation that defendants failed to pay them a "spread of hours" premium for each day they worked in excess of ten hours fails for the additional reason (conceded in the Amended Complaint) that AWI compensated each plaintiff in excess of the minimum hourly wage required under the law, *i.e.*, $25.00 per hour for Lu and $22.00 per hour for Duarte.  As the majority of courts in this District have acknowledged, such "spread of hours" premiums are properly limited to those employees who receive only minimum wage.  (*See* Point V, *infra*.)

Next, while plaintiffs purport to assert a claim that defendants failed to provide them with paid leave under the Family and Medical Leave Act ("FMLA"), that claim is apparently grounded on plaintiffs' erroneous assumption that FMLA leave is *paid* leave, which it is not. Further, the conclusory assertions that defendants terminated each plaintiff's employment in retaliation for having requested an FMLA-qualifying leave is undone by the allegations of the Amended Complaint itself.  With respect to Duarte, the Amended Complaint specifically avers that defendants fired her not for requesting FMLA leave, but rather for complaining about long hours and hard work.  And, with respect to Lu, the Amended Complaint fails to allege facts from which it may plausibly be inferred either that the leave he supposedly requested on his final day of employment was for a "serious health condition" within the meaning of the FMLA, or that the notice he gave regarding such requested leave reasonably apprised defendants that it potentially qualified as FMLA leave.  (*See* Point VI, *infra*.)

Finally, plaintiffs' common law claim based on intentional infliction of emotional distress is subject to dismissal as the Amended Complaint fails to set forth facts sufficient to satisfy the rigorous standard for pleading such a claim in the employment context, *i.e.*, that the conduct in

question was so "outrageous in character" and "extreme in degree" as to be regarded as "utterly intolerable in a civilized society."  Courts have long recognized that the type of behavior alleged here – at most, that plaintiffs worked for demanding supervisors seeking to achieve ambitious production goals (while being paid well above minimum wage and overtime) – is insufficient to sustain such a claim.  (*See* Point VII, *infra*.)

In sum, the scurrilous, inflammatory and inaccurate allegations in the Amended Complaint – including likening the bright, professional, large-windowed and high-ceilinged studio space in which plaintiffs formerly worked to a windowless, "third world sweatshop" – combined with plaintiffs' repeated attempts to try this case in the media, and the lack of legal substance to their claims, betray plaintiffs' true purpose:  to embarrass these high-profile, highly successful defendants and tarnish their professional reputations, in a shameless bid to extort a substantial monetary settlement.

Accordingly, for the reasons set forth in detail below, defendants respectfully request that the Court issue an Order granting their motion for judgment on the pleadings, and dismissing the Amended Complaint in its entirety.

<u>Statement of Facts</u>[1]

A.  <u>The Parties</u>

Plaintiffs Lu and Duarte are former employees of AWI (Am. Cmplt., ¶¶ 33, 38, 39 & 42). Lu worked for AWI as a sample maker (*i.e.*, sewer) in the AWI studio located in New York City, from September 8, 2008 until the termination of his employment on February 16, 2012 (*id.*,

---

[1]    The Statement of Facts is based on the allegations of the Amended Complaint ("Am. Cmplt."), which are assumed to be true solely for the purposes of the instant motion (*see Zustovich v. Harvard Maintenance, Inc.*, No. 08 Civ. 6856 (HB), 2009 WL 735062, *4 (S.D.N.Y. Mar. 20, 2009) (citation omitted)).  For the Court's reference, copies of the Amended Complaint, defendants' Answer and plaintiffs' previous pleadings (which may be considered on this motion, *see id.*, 2009 WL 735062, at *5) are attached as exhibits to the accompanying Declaration of Stephen L. Sheinfeld, dated June 8, 2012 ("Sheinfeld Decl.").

¶¶ 33, 38).  Duarte (misidentified in multiple paragraphs of the Amended Complaint as "Durante") was also employed in the same AWI studio as a sample maker (*i.e.*, sewer) from November 2, 2010 until February 21, 2012 (*id.*, ¶¶ 39, 42).  In those roles, plaintiffs constructed sample garments for AWI's collections and for presentation at runway shows, including New York City Fashion Weeks (*id.*, ¶¶ 33, 39).  Tellingly, neither Lu's nor Duarte's race(s) or national origin(s) are alleged in the Amended Complaint.

Defendants AWI, Alexander Wang Global Retail LLC and Alexander Wang New York City LLC are alleged to be companies located in New York City (*id.*, ¶¶ 10-12).  Individual defendants Alexander Wang and his brother Dennis Wang are alleged to be principals of the corporate defendants (*id.*, ¶ 13).  Alexander and Dennis Wang are further alleged to "share a common ethnic background" with many of the workers employed at the AWI studio (*id.*, ¶ 45).  "Jessica Doe," "Gini Doe" and "Natalie Doe" (collectively, the "Doe Defendants") are alleged to be managers at the AWI studio (*id.*, ¶¶ 14-15).[2]

B.      The Alleged Claims

According to the Amended Complaint, during the four seasonal Fashion Weeks in New York City, plaintiffs were regularly required to work fifteen-hour days, six days a week (Am. Cmplt., ¶¶ 33, 39).  AWI paid Lu and Duarte $25.00 and $22.00 per hour, respectively (*id.*).  The Amended Complaint further vaguely alleges, however, that "[n]ot all hours worked during the periods leading up to and including Fashion Week were included in [plaintiffs'] paychecks" (*id.*).  In similar conclusory fashion, the Amended Complaint alleges that plaintiffs "were required to work off the clock," that plaintiffs were not paid overtime for all hours worked in excess of forty per week, and that defendants failed to pay plaintiffs a "'spread of hours' premium . . . for each

---

[2]      As plaintiffs have not effected service of the Amended Complaint (or any of their earlier pleadings) on the Doe Defendants, they are not parties to this action.

day they worked ten (10) or more hours," purportedly in violation of the NYLL (*id.,* ¶¶ 49, 59-76).

Although the Amended Complaint fails to allege either plaintiff's race, it nonetheless purports to assert no fewer than six counts of race discrimination and hostile work environment against defendants, under Section 1981, the NYSHRL and the NYCHRL (*id.,* ¶¶ 77-94).  With respect to those claims, the Amended Complaint alleges that defendants hire "exclusively Asian or Latino immigrants" for garment worker positions, that unspecified managers called workers "lazy," "stupid" and "trouble maker," and that Asian workers were sometimes referred to as "China" (*id.,* ¶ 46).

The Amended Complaint further alleges that both plaintiffs suffered from medical conditions during their employment with AWI (*id.,* ¶¶ 36, 38, 40 & 41).  Specifically, Lu alleges that defendants "failed to provide [him] pay during his hospitalization" in February 2010 (*id.,* ¶ 36).  Lu further alleges that, two years later, in February 2012, he "asked for leave because [he] was physically debilitated and unable to work," and that defendants responded to that request by terminating his employment (*id.,* ¶ 38).

Duarte similarly claims that she was hospitalized in January 2012, and that defendants "refused to pay for [her] sick leave" (*id.,* ¶ 41).  Duarte further avers that, when she complained about long work hours in February 2012, she was fired (*id.,* ¶ 43).  Based on the foregoing averments, plaintiffs claim that defendants interfered with their rights under the FMLA, in violation of that statute (*id.,* ¶¶ 55, 57 & 95-99).

Finally, the Amended Complaint alleges that the demanding hours plaintiffs were required to work during the periods leading up to the Fashion Weeks constituted "extreme and outrageous conduct" that caused all studio workers employed by defendants, including plaintiffs,

to suffer "severe emotional distress" (*id.*, ¶ 50).  Plaintiffs further aver that unspecified managers "abuse[d]" and "berate[d]" them and other workers "to produce outstanding orders, without regard to how long it took to complete the orders or whether employees had breaks or rest time" (*id.*, ¶ 51).  Based on those allegations, plaintiffs purport to assert a claim against defendants for intentional infliction of emotional distress (*id.*, ¶¶ 100-103).

C.     Procedural Posture

On or about February 21, 2012, Lu filed suit in New York State Supreme Court against AWI and Dennis Wang only (Sheinfeld Decl., Exh. A).  Lu's state court complaint purported to assert a claim under the NYLL, as well as a laundry list of claims for breach of contract, unjust enrichment, wrongful discharge, retaliation, negligence, defamation, civil conspiracy and breach of fiduciary duty, and sought damages in the amount of $50 million on each of its nine causes of action.  Shortly thereafter, on or about March 8, 2012, Lu amended his state court complaint and added Duarte as co-plaintiff (*id.*, Exh. B).  One week later, however, on March 15, 2012, plaintiffs voluntarily discontinued the state court action (*id.*, Exh. C).

Plaintiffs refiled in federal court on or about March 23, 2012 (*id.*, Exh. D).  Their initial federal complaint named as defendants two corporate entities in addition to AWI (Alexander Wang Global Retail LLC and Alexander Wang New York City LLC), as well as individual defendant Alexander Wang, and the three Doe Defendants.  The complaint purported to assert claims under the FLSA, the NYLL, the FMLA, Section 1981, the NYSHRL and the NYCHRL, as well as a common law claim for intentional infliction of emotional distress.  On or about March 26, 2012, plaintiffs amended their complaint, purporting to assert the same claims but incorporating additional fact allegations (*id.*, Exh. E).

On June 4, 2012, defendants filed their answer, denying the allegations in the Amended

Complaint (*id.*, Exh. F).  On June 8, 2012, defendants filed the instant motion, pursuant to Fed.

R. Civ. P. 12(c), seeking judgment on the pleadings dismissing the Amended Complaint in its

entirety.

<u>Argument</u>

I.

<u>THE STANDARD FOR DISMISSAL UNDER FED. R. CIV. P. 12(c)</u>

A motion for judgment on the pleadings made pursuant to Fed. R. Civ. P. 12(c) is

evaluated using the same standards as a motion to dismiss made pursuant to Fed. R. Civ.

P. 12(b)(6) (*Bank of New York v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010)).

Thus, to survive a Rule 12(c) motion, a plaintiff "must plead 'enough facts to state a claim that

is plausible on its face'" (*Sazon Inc. v. State of New York*, No. 11 Civ. 3666 (HB), 2011 WL

5910171, *3 (S.D.N.Y. Nov. 28, 2011), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

570 (2007)).  A "facially plausible claim," in turn, is "one where 'the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged'" (*id.*, quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676-77 (2009); *accord Acosta

v. City of New York*, No. 11 Civ. 856 (KBF), 2012 WL 1506954 (S.D.N.Y. Apr. 26, 2012) (to

avoid dismissal, "plaintiff must provide the grounds upon which [his or her] claim rests through

factual allegations sufficient 'to raise a right to relief above the speculative level'")).

As this Court has recognized, the "determination of whether a complaint states a

'plausible claim for relief' is a 'context-specific task' that requires the application of 'judicial

experience and common sense,'" and "[u]nless a plaintiff's well-pleaded allegations have

'nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be

dismissed'" (*Sazon*, 2011 WL 5910171, at *3 (citations omitted)).  Further, while the court must draw all reasonable inferences in the non-movant's favor, "it need not accord '[l]egal conclusions, deductions or opinions couched as factual allegations . . . a presumption of truthfulness" (*id.*, citations omitted).

II.

THE AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR RACE
DISCRIMINATION UNDER SECTION 1981, THE NYSHRL OR THE NYCHRL

Because plaintiffs' claims for disparate treatment race discrimination under Section 1981, the NYSHRL and the NYCHRL (Counts III, V and VII of the Amended Complaint) fail to state a claim that is plausible on its face under any of those statutes, they must be dismissed.

Discrimination claims under Section 1981, the NYSHRL and the NYCHRL are analyzed using the analysis articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1972), for claims brought under Title VII of the Civil Rights Act of 1964 (*see Acosta*, 2012 WL 1506954, at *4-6).  To state a *prima facie* claim of discrimination under each of those statutes, plaintiffs must allege facts sufficient to establish each of the following elements: (i) that they are members of a protected class; (ii) that they are qualified for the position(s) in question; and, (iii) that they suffered an adverse employment action (iv) under circumstances giving rise to a reasonable inference of discrimination (*id.* at *4, citing *McDonnell Douglas*, 411 U.S. at 802-803).

While plaintiffs need not plead a *prima facie* case of discrimination to survive a motion to dismiss (*see Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002)), they must nonetheless give defendants fair notice of their claims and the grounds upon which they rest, and sufficiently indicate the possibility of discrimination so as to present a plausible claim for disparate treatment (*see Acosta*, 2012 WL 1506954, at *5).  Further, as this Court has pointed out, "the holding in

9

*Swierkiewicz* does not mean that '[p]laintiffs bear no burden at the pleading stage.' Rather, 'a plaintiff must allege . . . those facts necessary to a finding of liability . . . [and] a plaintiff's allegations, accepted as true, must be sufficient to establish liability," *i.e.*, "bald assertions and conclusions of law will not suffice" (*Zustovich v. Harvard Maintenance, Inc.*, No. 08 Civ. 6856 (HB), 2009 WL 735062, *5 (S.D.N.Y. Mar. 20, 2009); *see also Acosta*, 2012 WL 1506954, at *5 (recognizing that "[t]he *Iqbal* plausibility standard applies in conjunction with employment discrimination pleading standards")).

        In the instant case, the Amended Complaint fails to plead facts sufficient to state a plausible claim of race discrimination for at least two reasons:  first, it fails to allege facts showing that plaintiffs are members of a protected class; and, second, it fails to allege facts sufficient to infer that plaintiffs suffered an adverse employment action because of race.

        A.        Plaintiffs Fail To Allege that They
                   Are Members of a Protected Class

        Remarkably, nowhere in their 103-paragraph Amended Complaint do plaintiffs allege facts showing that they are members of a protected class.  While the Amended Complaint contains broad and conclusory allegations that "all" purported class members are "immigrants" and "minorities," neither Lu nor Duarte alleges his or her race or national origin.  As a threshold matter, plaintiffs' failure to allege they are members of a protected class is fatal to their claims of race discrimination (*see Robinson v. New York Police Dep't Personnel Employment Division*, No. 99 Civ. 1654 (DLC), 1999 WL 1044361, *1 (S.D.N.Y. Nov. 18, 1999) (concluding that, "[a]lthough [plaintiff] alleges that he was discriminated against based on his race and color, he fails to identify himself as a member of any protected class, . . . [*i.e.,*] he identifies neither his race nor his color," and "[t]his failure to plead an essential element of the claim is sufficient to warrant dismissal of the complaint")).

10

Defendants respectfully submit that plaintiffs' failure to identify their race(s) in what is nothing less than the fourth iteration of their complaint serves as tacit acknowledgment of the inescapable conclusion that race played no role in the conduct alleged in this action.

B.  Plaintiffs Fail to Allege that They Suffered an Adverse Employment Action under Circumstances Giving Rise to a Reasonable Inference of Race Discrimination

Even assuming *arguendo* that plaintiffs were granted leave to replead to assert their race(s), such amendment would be futile, as plaintiffs' race discrimination claims also fail for the further reason that the Amended Complaint fails to identify a single adverse employment action suffered by them *because of* race.

Indeed, the only adverse employment action to which plaintiffs point in their Amended Complaint is the termination of each of their employments.  However, Lu specifically alleges that defendants terminated his employment because he requested leave and complained about working conditions (*see* Am. Cmplt., ¶ 38).  Similarly, Duarte alleges that her employment was terminated when she complained about having to construct a leather jacket in an unreasonably short time (*see id.*, ¶ 43).  Plaintiffs' failure to allege facts sufficient to raise a plausible inference that the terminations of their employments occurred because of their race(s), without more, requires dismissal of their race discrimination claims (*see Acosta*, 2012 WL 1506954, at *5 (noting that "[p]laintiff does not connect the fact that he is Hispanic to any of the alleged adverse actions taken against him," and concluding that such failure "is fatal to his discrimination claim[s]"); *Chang v. City of New York Dep't for the Aging*, No. 11 Civ. 7062 (PAC) (JLC), 2012 WL 1188427, *4 (S.D.N.Y. Apr. 10, 2012) (granting motion to dismiss discrimination claim where plaintiff "has not alleged . . . that any actions taken were motivated by race"); *cf. Flowers v. Construction & General Building Laborers Local 79*, No. 11 Civ. 6891 (HB), 2012 WL

11

1514816, *3 (S.D.N.Y. Apr. 30, 2012) (dismissing Title VII discrimination claim where "[p]laintiff does not provide any facts to suggest that the [alleged adverse action occurred] because of racial discrimination")).[3]

Ironically, the only employment action that plaintiffs even arguably tie to race is their hiring by AWI (*see* Am. Cmplt., ¶ 46 ("[d]efendants hire exclusively minorities for the garment worker positions")). However, even assuming the truth of that allegation, hiring an individual is self-evidently not an adverse employment action (*see Son v. Reina Bijoux, Inc.*, 823 F. Supp. 2d 238, 243 (S.D.N.Y. 2011) (recognizing that "[d]efendants' statement that '[t]hat is why we hire Koreans' indicates *not* that [plaintiff] suffered an adverse employment action as a consequence of being Korean, but that she was hired because of defendants' stereotypes about Koreans," which is not an adverse employment action)).

Significantly, the Amended Complaint does not identify a single individual outside the protected class who received more favorable treatment than plaintiffs. To the contrary, the Amended Complaint expressly avers that *all* sewers at the AWI studio were treated similarly, and subject to the same, allegedly demanding working conditions (*see* Am. Cmplt., ¶¶ 46-47). Where, as here, all workers receive the same treatment, there can be no inference of discrimination, on the basis of race or otherwise (*see Brown v. Henderson*, 257 F.3d 246, 252, 255 (2d Cir. 2001) ("mistreatment at work, whether through subjection to a hostile environment

---

[3] The Amended Complaint makes passing reference to plaintiffs not being considered for promotions due to their ethnic backgrounds (*see* Am. Cmplt., ¶ 46). Yet nowhere in the Amended Complaint do plaintiffs articulate any facts from which a plausible discriminatory failure to promote claim could be inferred, *i.e.*, that they applied for a particular position, that they were qualified for such position, and that they were denied the promotions, or that comparators outside the protected class received such promotions. In the absence of such allegations, plaintiffs cannot state a claim based on failure to promote (*see, e.g., Johnston v. Carnegie Corp. of New York*, No. 10 Civ. 1681 (PAC) (DF), 2011 WL 1085033, *11 (S.D.N.Y. Feb. 24, 2011) (granting defendant's motion to dismiss plaintiff's failure to promote claim where plaintiff failed to allege "that he actually applied for a particular job position and was rejected")).

or through such concrete deprivations as being fired . . . , is actionable . . . only when it occurs because of an employee's . . . protected characteristic"); *Hadman v. Sebelius*, No. 09 Civ. 4414 (ARR), 2011 WL 4736972, *6 (E.D.N.Y. Oct. 6, 2011) ("[h]ostility or unfairness in the workplace that is not the result of discrimination against a protected characteristic is simply not actionable")).

Nor does the Amended Complaint contain any other allegations sufficient to raise a plausible inference of race animus. Indeed, the Amended Complaint avers that AWI principals Alexander and Dennis Wang "share a common ethnic background" with many of the sewers employed at the AWI studio (Am. Cmplt., ¶ 45), a fact that courts have acknowledged cuts *against* any plausible inference of race discrimination (*see, e.g., Ragin v. East Ramapo Central School District*, No. 05 Civ. 6496 (PGG), 2010 WL 1326779, *12 (S.D.N.Y. Mar. 31, 2010) (noting that "any inference of discrimination is undermined by the fact that the decision-makers belonged to the same protected class as plaintiffs," and that, in such instances, "claims of discrimination are less plausible," citing cases)).[4]

For all of the foregoing reasons, the race discrimination claims set forth in Counts III, IV and VII of the Amended Complaint should be dismissed.

---

[4]   Finally, to the extent plaintiffs purport to assert a claim under Section 1981 based upon the allegations that some Asian workers were referred to as "China" or were discriminated against based upon their status as immigrants, plaintiffs appear to be attempting to state a claim of national origin (not race) discrimination (*see* Am. Cmplt., ¶¶ 46-47). Any claim of national origin discrimination under Section 1981, however, is also subject to dismissal for the additional reason that, as the Second Circuit has acknowledged, that statute does not prohibit discrimination on any basis other than race (*see Anderson v. Conboy*, 156 F.3d 167, 170 (2d Cir. 1998) ("[i]t is settled that Section 1981 does not prohibit discrimination on the basis of . . . national origin"); *see also DiStefano v. Communication Workers of America*, No. 10 Civ. 1166 (LTS) (FM), 2012 WL 1080249, *3 (S.D.N.Y. Mar. 30, 2012) (same)).

III.

### THE AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR HOSTILE WORK ENVIRONMENT UNDER SECTION 1981, THE NYSHRL OR THE NYCHRL

The Amended Complaint similarly fails to state a plausible discrimination claim based on hostile work environment, under Section 1981 (Count IV), the NYSHRL (Count VI) or the NYCHRL (Count VIII).

It is axiomatic that, to state a plausible claim based on a hostile work environment under any of those statutes, the alleged "hostility" "must be borne of 'animus towards [plaintiff] as a result of [his] membership in a protected class'" (*Acosta*, 2012 WL 1506954, at *7, quoting *Sullivan v. Newburgh Enlarged School District Clarence Cooper*, 281 F. Supp. 2d 689, 704 (S.D.N.Y. 2003)). In other words, the alleged hostility must be *because of* plaintiff's membership in the protected class; where the sources of alleged animus are something other than a plaintiff's protected characteristic, a claim based on hostile work environment cannot stand (*see Brown*, 257 F.3d at 252, 255; *Hadman*, 2011 WL 4736972, at *6). As courts have observed, the antidiscrimination laws "are not intended to promote or enforce civility, gentility or even decency" in the workplace (*see, e.g., Ennis v. Sonitrol Management Corp.*, No. 02 Civ. 9070, 2006 WL 177173, *9 (S.D.N.Y. Jan. 25, 2006)).

Further, under both Section 1981 and the NYSHRL, a hostile work environment claim is sufficiently pled only where the complaint alleges facts sufficient to raise a plausible inference that a claimant's workplace was "permeated with discriminatory intimidation, ridicule and insult . . . sufficiently severe or pervasive to alter the conditions of [claimant's] employment and create an abusive working environment" (*Acosta*, 2012 WL 1506954, at *7). In determining whether a work environment meets that standard, courts consider a number of factors, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or

14

humiliating, or a mere offensive utterance; and, whether it unreasonably interferes with the employee's work performance (*id.*, citing *Harris v. Forklift System, Inc.*, 510 U.S. 17, 23 (1993)).[5]

Here, the fact allegations in the Amended Complaint, even if assumed true, fail to sustain a plausible hostile work environment claim under federal, State or City law.  In the first place, notwithstanding its prolixity, the Amended Complaint contains not a single averment indicating that plaintiffs were subjected to a hostile working environment *because of* their race(s), as necessary to state a claim under each of those statutes.  Plaintiffs' averments of long hours and demanding supervisors, absent any allegations plausibly linking those alleged conditions to plaintiffs' race(s), fail to support a plausible claim based on hostile work environment (*see Sullivan*, 281 F. Supp. 2d at 704).

Indeed, as noted above, the Amended Complaint contains only a single allegation of purportedly disparaging references to certain workers' national origins, *i.e.*, that Asian workers were sometimes referred to as "China" (*see* Am. Cmplt., ¶ 46).  Even assuming that single alleged utterance were enough to establish a causal link between any alleged hostility and plaintiffs' race(s) or national origin(s) – which it is not – it is patently insufficient to meet the "severe and pervasive" standard necessary to state a claim for hostile work environment under either federal or State law (*see, e.g., Brown*, 221 F.3d at 339; *Sullivan*, 281 F. Supp. 2d at 704). Nor does that allegation rise beyond the "petty slights and trivial inconveniences" threshold required to state a hostile work environment claim under the NYCHRL (*see, e.g., Fullwood v.*

---

[5]    Although, for purposes of establishing liability under the NYCHRL, plaintiff need not satisfy the "severe or pervasive" standard applicable to claims under Section 1981 and the NYSHRL, he must nonetheless allege that he suffered "'unequal treatment' based on [his] membership in a protected class" (*Acosta*, 2012 WL 1506965, at *8, citing *Williams v. New York City Housing Authority*, 61 A.D.3d 62, 77, 872 N.Y.S.2d 27 (N.Y. App. Div. 1st Dep't 2009)).

*Association for the Help of Retarded Children, Inc.*, No. 08 Civ. 6739 (SAS), 2010 WL 3910429,

*8-9 (S.D.N.Y. Sept. 28, 2010); *Fleming v. MaxMara*, 644 F. Supp. 2d 247 (S.D.N.Y. 2009)).

Finally, it bears mention that plaintiffs' hostile work environment claims under the

NYSHRL (Count VI) and the NYCHRL (Count VIII) consist of nothing more than skeletal

recitations of the applicable law, unsupported by any facts whatsoever (Am. Cmplt., ¶¶ 89-90,

93-94).  Such naked allegations are plainly insufficient to satisfy the pleading requirements

articulated in *Iqbal* and *Twombly* (*see Acosta*, 2012 WL 1506954, at *6-7).

Because plaintiffs' hostile work environment claims fail to state a plausible claim for

relief under federal, State or City law, they should be dismissed.

IV.

THE AMENDED COMPLAINT FAILS TO STATE
A CLAIM FOR UNPAID OVERTIME WAGES UNDER THE FLSA

Under the pleading standard set forth in *Iqbal* and *Twombly*, plaintiffs' claim for alleged

violations of the FLSA (Count I) also must be dismissed.

Courts have held that a plaintiff pleading a claim for overtime wages "should, at least

approximately, allege the hours for which these wages were not received" (*DeSilva v. North

Shore-Long Island Jewish Health System, Inc.*, 770 F. Supp. 2d 497, 509 (E.D.N.Y. 2011), citing

*Zhong v. August Corp.*, 498 F. Supp. 2d 625, 628 (S.D.N.Y. 2007)).  In *DeSilva*, the court

granted defendant's motion to dismiss plaintiffs' overtime claims, holding that plaintiffs' blanket

allegations that they "regularly" worked hours "in excess of forty" per week were insufficient to

state a claim under the FLSA (*id.*).  As the court explained, "it is not enough to merely allege that

plaintiffs worked beyond forty hours per week. . . .  Instead, plaintiffs must provide at least some

approximation of the overtime hours that defendants required them to work and a time frame for

when those hours were worked" (*id.*, citations omitted; *see also Wilson v. Pioneer Concepts,*

16

*Inc.*, No. 11 Civ. 2353, 2011 WL 3950892, *3 (N.D. Ill. Sept. 1, 2011) (holding that complaint's allegations that "unidentified employees worked an unidentified number of hours during lunch breaks and had an unspecified amount of time rounded off to their detriment on the time clock, and that some of those employees may have worked overtime without proper pay" were "insufficient to put [defendant] on notice of a plausible FLSA claim against it"); *Villegas v. J. P. Morgan Chase & Co.*, No. C 09-00261, 2009 WL 605833, *5 (N.D. Cal. Mar. 9, 2009) (dismissing FLSA overtime claim that merely "recit[ed] that [plaintiff] did not receive properly computed overtime wages," holding that "[t]his allegation does not state an overtime wage claim because it is not much more informative than an allegation that she was not paid for overtime work in general")).

Here, Count I of the Amended Complaint merely parrots the elements of a claim under the FLSA, and offers nothing more to support that claim than vague, sweeping and conclusory allegations, *i.e.*, that defendants refused to pay plaintiffs "for *all of* their hours worked" as a result of "time shaving" and "failing to pay the proper overtime premium;" that "*[n]ot all* of the hours worked during the periods leading up to and including Fashion Week were included in [plaintiffs'] paychecks;" and, that plaintiffs and other workers "were required to work off the clock" in that they were "required to work before the [*sic*] clocked in or work after they clocked out" (*see* Am. Cmplt., ¶¶ 21, 33, 39, 49 & 54, emphasis supplied).  Plaintiffs' failure to provide even an approximation as to the quantity of the allegedly uncompensated hours, or any facts regarding defendants' alleged "off the clock" and "time shaving" policies, warrants dismissal of their FLSA claims, as a matter of law.

V.

THE AMENDED COMPLAINT FAILS TO STATE
A CLAIM UNDER THE NEW YORK LABOR LAW

Plaintiffs' claims under the NYLL (Count II) suffers from the same pleading infirmity as their FLSA claims, *i.e.*, failure to allege facts sufficient to state a plausible claim under that statute. In support of that count, plaintiffs offer only generalized allegations that defendants "refused to allow for proper break times," and that plaintiffs "regularly worked more than ten (10) hours in a workday" and were therefore entitled to a "spread of hours" premium under the NYLL (*see* Am. Cmplt., ¶¶ 26, 27, 74 & 75). Again, the Amended Complaint contains no factual allegations as to when plaintiffs were supposedly deprived of break time or "spread of hours" premiums, or how frequently they were denied such breaks and premiums. Nor are the Amended Complaint's conclusory allegations that do nothing more than reiterate the language of the statute sufficient to state a claim under the NYLL (*see DeSilva*, 770 F. Supp. 2d at 509; *Lewis v. Alert Ambulette Service Corp.*, No. 11 Civ. 442 (JBW), 2012 WL 170049, *5 (E.D.N.Y. Jan. 19, 2012) (holding that, because "New York State labor regulations substantially incorporate and adopt the FLSA's overtime regulations[,] . . . the same elements are required to prove a claim under New York labor law as under federal law")).

Plaintiffs' "spread of hours" premium claim under the NYLL is also subject to dismissal for the additional reason that AWI paid plaintiffs in excess of the minimum wage required under the law, *i.e.*, $25.00 per hour for Lu, and $22.00 per hour for Duarte (*see* Am. Cmplt., ¶¶ 33, 39). As the majority of courts in this District have held, the NYLL's "spread of hours" provision does not apply to employees who are paid more than the minimum wage (*see, e.g., Li Ping Fu v. Pop Art International, Inc.*, No. 10 Civ. 8562 (DLC), 2011 WL 6092309, *2 (S.D.N.Y. Dec. 7, 2011); *Zubair v. EnTech Engineering P.C.*, 808 F. Supp. 2d 592, 601 (S.D.N.Y. 2011) (recognizing that

New York's "spread of hours" provision "is properly limited to those employees who receive only the minimum compensation required by law"); *Sosnowy v. A. Perri Farms, Inc.*, 764 F. Supp. 2d 457, 473-74 (E.D.N.Y. 2011) (granting motion to dismiss "spread of hours" claim, noting that "the spread of hours provision is properly limited to enhancing the compensation of those receiving only the minimum [wage] required by law")).

Accordingly, plaintiffs' claims under the NYLL should be dismissed.

## VI.

## THE AMENDED COMPLAINT FAILS
## TO STATE A CLAIM UNDER THE FMLA

Under the FMLA, eligible employees are entitled to up to twelve weeks of qualifying leave for a "serious health condition" (29 U.S.C. § 2612(a)(1)(D)). The FMLA defines a "serious health condition" as "an illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider" (29 U.S.C. § 2611(11)).

The statute further provides that an employee who requests such leave must provide his employer with notice of facts from which an FMLA-qualifying reason for the leave may reasonably be inferred (29 U.S.C. § 2612(e)(1)). While the employee need not invoke the FMLA by name, he must nonetheless apprise his employer that "leave is needed because of a serious health condition" as defined in the statute (*Miller v. Venator Group, Inc.*, No. 00 Civ. 0454 (HB), 2000 WL 648186, *2 (S.D.N.Y. May 18, 2000)). As this Court explained in *Miller*, "[i]n determining whether an employee has provided notice of the need for FMLA leave to an employer, '[t]he critical question is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition'" (*id.* at *3, citation omitted; *accord Roff v. Low Surgical & Medical Supply, Inc.*,

No. CV-03-3655 (SJF) (JMA), 2004 WL 5544995, *9 (E.D.N.Y. May 11, 2004) (holding that "[a]dequate notice requires that sufficient information be imparted to the employer to reasonably apprise it of the employee's request to take leave for a 'serious health condition'")).

Significantly, the FMLA entitles eligible employees to *unpaid* leave only (*see Smith v. Westchester County*, 769 F. Supp. 2d 448, 461-62 (S.D.N.Y. 2011); *Fulham v. HSBC Bank USA*, No. 99 Civ. 11054 (JGK), 2001 WL 1029051, *3 (S.D.N.Y. Sept. 6, 2001) (recognizing that "[t]he FMLA explicitly permits employers to provide FMLA leave on an unpaid basis")). Further, to establish FMLA retaliation, a plaintiff must show "a causal connection between the protected activity and the adverse employment action" (*Perry v. NYSARC, Inc.*, 424 Fed. App'x 23, 26 (2d Cir. 2011) (citation omitted)).

Here, plaintiffs' claims that they were denied their rights under the FMLA (Count IX) are subject to dismissal for several reasons. First, although the Amended Complaint repeatedly alleges that "[n]either plaintiff was compensated for their time off caused by their illnesses suffered from the long hours of work, in violation of the FMLA," and that defendants "violated the FMLA because they failed to pay plaintiffs for the sick leave" (Am. Cmplt., ¶¶ 55, 57), as noted above, plaintiffs were not entitled to *paid* leave under the statute. Accordingly, they cannot sustain an FMLA claim predicated on defendants' alleged failure to pay them during such leave (*Smith*, 769 F. Supp. 2d at 461-62; *Fulham*, 2001 WL 1029051, at *3).

Second, with respect to Duarte, the facts alleged fail to draw the necessary causal connection between an FMLA-protected activity and an alleged adverse employment action. Although the Amended Complaint contains a conclusory allegation that, "[w]hen Plaintiffs asked for medical leave, they were summarily dismissed" (Am. Cmplt., ¶ 96), its fact allegations concerning the circumstances of Duarte's termination state otherwise, *i.e.*, that she was fired

20

because she complained about long hours and hard work (*id.*, ¶¶ 42, 43), and thus negate any plausible inference that the termination of her AWI employment was linked to a request for leave.

Third, with respect to Lu, the Amended Complaint fails to aver any facts from which it may plausibly be inferred either that the leave he allegedly requested on his final day of AWI employment was for a "serious health condition," or that he so notified defendants. Rather, the Amended Complaint merely alleges that "[o]n or about February 2012 [*sic*]," Lu "asked for leave because [he] was physically debilitated and unable to work," and that he "also complained about the inhumane working conditions," in response to which, defendants fired him (Am. Cmplt., ¶ 38). As the Amended Complaint "fail[s] to allege facts sufficient to meet the definition of a 'serious health condition' listed in the statute" – *i.e.*, it does not provide any facts from which it may reasonably be inferred that the leave requested involved "inpatient care" or "continuing treatment" – it plainly "falls short of what is required under the FMLA," and is subject to dismissal (*Miller*, 2000 WL 648186, at *2; *see also Roff*, 2004 WL 5544995, at *9).

Nor does the Amended Complaint set forth allegations suggesting that Lu's communication to defendants regarding the leave "contained detail sufficient to put [defendants] on notice that [he] was suffering from a serious health condition," *i.e.*, that the leave being requested at that time was potentially FMLA-qualifying (*Miller*, 2000 WL 648186, at *3; *Roff*, 2004 WL 5544995, at *10). For all of the foregoing reasons, plaintiffs' FMLA claims should be dismissed.[6]

---

[6]     Finally, Lu also alleges that he took a leave of absence in February 2010 (*see* Am. Cmplt., ¶¶ 34-36). Even assuming that leave were potentially FMLA-qualifying, however, AWI's termination of Lu's employment a full two years later (in February 2012) is too temporally remote to serve as evidence of retaliatory causation, as a matter of law (*see Perry*, 424 Fed. App'x at 26; *cf. Glaves-Morgan v. City of New York*, No. 11 CV 1248 (HB), 2012 WL 951859, *11 (S.D.N.Y. Mar. 21, 2012) (dismissing Section 1981 retaliation claim, holding that "[a] reasonable juror could not find

VII.

## THE AMENDED COMPLAINT FAILS TO STATE A CLAIM
## FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Lastly, plaintiffs' claim for intentional infliction of emotional distress (Count X) should be dismissed as the Amended Complaint fails to set forth facts sufficient to satisfy the rigorous standard applicable to such claims under New York law.

To state a claim for intentional infliction of emotional distress under New York law, a plaintiff must plead:  (i) extreme and outrageous conduct; (ii) the intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and the injury; and, (iv) severe emotional distress (*see Lee v. Sony BMG Music Entertainment*, 557 F. Supp. 2d 418, 426 (S.D.N.Y. 2008)).  "As the New York Court of Appeals has observed, the standard for making out a valid claim of intentional infliction of emotional distress is 'rigorous, and difficult to satisfy'" (*id.* at 426, quoting *Howell v. New York Post Co.*, 81 N.Y.2d 115, 112, 596 N.Y.S.2d 350, 353 (N.Y. 1993)).  "The conduct must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society'" (*id.*; *accord Lydeatte v. Bronx Overall Economic Development Corp.*, No. 00 Civ. 5433 (GBD), 2001 WL 180055, *2 (S.D.N.Y. Feb. 22, 2001) (holding that, in order to survive a motion to dismiss, "[t]he conduct alleged must be such that it can be fairly characterized as egregious, utterly despicable, heartless or flagrant," and that "[a]cts which merely constitute harassment, disrespectful or disparate treatment, a hostile environment, humiliating criticism,

---

that these adverse actions taken against [plaintiff] were causally connected to her complaints which were made approximately two years earlier," and pointing out that "[d]istrict courts in this Circuit have consistently held that a passage of more than two months between the protected activity and the adverse employment action does not allow for an inference of causation")).

22

intimidation, insults or other indignities fail to sustain a claim of intentional infliction of emotional distress")).

In employment cases like this one, courts are "'particularly cautious' in allowing claims of intentional infliction of emotional distress to proceed past the pleading stage" (*Pallonetti v. Liberty Mutual*, No. 10 Civ. 4487, 2011 WL 519407 (RWS), *11 (S.D.N.Y. Feb. 11, 2011) (citation omitted); *Semper v. New York Methodist Hospital*, 786 F. Supp. 2d 566, 586-88 (E.D.N.Y. 2011)). Thus, courts routinely dismiss such claims "where the plaintiff's allegations regarding his/her treatment by supervisors or other employees do not rise to the 'outrageous' level required to state a claim" (*Pallonetti*, 2011 WL 519407, at *11 (citations omitted); *see also Ahmed v. Compass Group*, 99 Civ. 10032 (JSM), 2000 WL 1072299, *10 (S.D.N.Y. Aug. 3, 2000) (noting that "New York courts routinely dismiss claims for intentional infliction of emotional distress in the employment context, except where such claims [are] accompanied by allegations of sex discrimination and, more, significantly, battery")).

Here, the allegations of the Amended Complaint amount to nothing more than a highly demanding working environment.[7] As New York courts have consistently made clear, such allegations are patently insufficient to meet the "extreme" and "outrageous" level required to state a claim for intentional infliction of emotional distress (*see Gilani v. National Association of Securities Dealers, Inc.*, No. 96 Civ. 8070 (SS), 1997 WL 473383, *14 (S.D.N.Y. Aug. 19, 1997); *Gerzog v. London Fog Corp.*, 907 F. Supp. 590, 604 (E.D.N.Y. 1995)). Accordingly, that claim too must be dismissed.[8]

---

[7]     As a threshold matter, it bears mention that the allegations contained in Count X in support of plaintiffs' intentional infliction of emotional distress claim do not even purport to incorporate the preceding paragraphs of the Amended Complaint, and dismissal of that claim is appropriate on that basis alone (*see* Am. Cmplt., ¶¶ 100-103).

[8]     Finally, to the extent plaintiffs intended to assert a civil RICO claim – *see* Am. Cmplt., ¶¶ 6, 7 (citing 18 U.S.C. § 1965 and apparently purporting to invoke this Court's jurisdiction under that

Conclusion

For the reasons set forth above, defendants respectfully request that this Court issue a

Order granting judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) and dismissing the

claims set forth in the Amended Complaint in their entirety, and granting such other and further

relief as the Court deems just and proper.


Dated: New York, New York
       June 8, 2012

                                        Respectfully submitted,

                                        WINSTON & STRAWN LLP


                                        By: /s/ Stephen L. Sheinfeld
                                             Stephen L. Sheinfeld
                                        200 Park Avenue
                                        New York, New York 10166
                                        (212) 294-6700
                                        ssheinfeld@winston.com

                                        Attorneys for Defendants
                                        Alexander Wang Incorporated
                                        Alexander Wang Global Retail LLC
                                        Alexander Wang New York City LLC
                                        Alexander Wang and Dennis Wang



Of Counsel:

     William M. Sunkel

---

statute) – suffice it to point out that the Amended Complaint does not contain any facts from
which such a claim may plausibly be inferred.

24